# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KENNETH BALDWIN,

:

    Petitioner,

Case No. 1:11-cv-15

:

    -vs-

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

Warden, Madison Correctional Institution,

:

    Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Kenneth Baldwin to obtain relief from the eleven year sentence he is serving in Respondent's custody upon his conviction in the Hamilton County Common Pleas Court.

Petitioner pleads the following Grounds for Relief:

> **Ground One:** Fifth Amendment right to remain silence [sic] was violated when State used this right against Defendant at trial.
>
> **Supporting Facts**: Argument to the jury that Defendant did not deny being present at the scene is improper comment on Defendant's exercise of his right to silence.
>
> **Ground Two:** Defendant was denied his right of confrontation.
>
> **Supporting Facts:** Testimony that Jomar Lyles was interviewed and that he identified Defendant's picture from a photo array as the shooter was inadmissible and prejudicial hearsay when Mr. Lyles failed to appear pursuant to his subpoena, and was never available to be cross-examined.
>
> **Ground Three:** Defendant was prejudiced when court failed to

merge multiple counts for identical conduct in voilation [sic] of the Double Jeopardy Clause Clause [sic] of the United States Constitution.

**Supporting Facts:** Defendant could only be convicted of a single count of felonious assault where he fired only a single shot, and only a single individual was injured, and there was no evidence of a separate animus or intent to injure any other individuals & discharge of a firearm near prohibited premises and felonious assault are allied offenses of similar import, and should have been merged for purpose of conviction and sentence.

**Ground Four:** Defendant was denied the effective assistance of counsel in violation of the Sixth Amendment.

**Supporting Facts:**

A) Counsel was ineffective for failing to object to any use of Defendant's post-arrest silence, including his decision not to testify, as substantive evidence of guilt.
B) Counsel was ineffective for failing to object to hearsay testimony about a photo identification by a witness who never testified or became available for cross-examination.
C) Counsel was ineffective for failing to argue for merger of allied offenses prior to sentencing, and for failing to object to consecutive sentences for those offenses.

(Petition, Doc. No. 4, PageID 47-52.)

**Analysis**

Mr. Baldwin was indicted by the Hamilton County Grand Jury in 2008 on three counts of felonious assault, one count of discharging a firearm at or near a prohibited premises, and one count of having a weapon while under disability. A jury found him guilty of two counts on two of the

assault charges, both with firearm specifications, and on the other two counts. He was sentenced to an aggregate eleven years imprisonment. The judgment was affirmed by the First District Court of Appeals on October 9, 2009. Mr. Baldwin did not appeal to the Ohio Supreme Court until April 19, 2010, and that court declined further review.

## Procedural Default

Respondent asserts that Mr. Baldwin has procedurally defaulted on all of his claims by failing to file a timely appeal to the Ohio Supreme Court. Mr. Baldwin admits that his notice of appeal was untimely, but asserts that happened because his appellate attorney never notified him of the adverse decision in the court of appeals until after the forty-five days for appeal had expired. He also made this same point when he applied for leave to file a delayed appeal to the Ohio Supreme Court. There he attached a letter the date of which presumably would show when his counsel advised him of the appellate decision. (Return of Writ, Doc. No. 10, PageID 166.) However, Respondent has not attached that page of the record to the Return.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th

Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Eley v. Bagley*, 604 F.3d 958 (6th Cir. 2010) *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (6th Cir.2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster*

> *County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

While the Ohio Supreme Court did not give reasons for its denial of delayed appeal, it must be presumed by this Court to have enforced the 45-day time limit. *Simpson v. Sparkman*, 94 F.3d 199 (6th Cir. 1996). Without question that is an adequate and independent state ground of decision.

Ineffective assistance of counsel can constitute excusing cause for a procedural default. Ordinarily one must present the claim of ineffective assistance to the state courts for adjudication before bringing it to federal court. *Edwards v. Carpenter,* 529 U.S. 446 (2000). However, in this case the State of Ohio has no mechanism to adjudicate the claim Mr. Baldwin makes. While an Ohio defendant can move to reopen an appeal to correct ineffective assistance of appellate counsel, Ohio law does not provide for the taking of evidence in support of such a motion, and here Petitioner would have had to submit proof of when his attorney notified him of the adverse appellate decision.

Notifying a client of an adverse decision so as to protect his right to proceed on appeal is certainly a core duty of an attorney, especially when that attorney is not going to remain on the case for the next stage. To fail to notify a client until it is too late for the client to proceed *pro se* to the next stage is a dereliction of professional duty. It certainly can be presumed to be prejudicial when

the court of appeals decided the appeal on the merits and not on an *Anders* brief.

Upon these facts the Magistrate Judge finds the procedural default defense raised by Respondent is not well taken and will proceed to consider the merits of Petitioner's claims. This will not preclude the Court from considering whether merit consideration is barred by a procedural default separate from the failure to file a timely appeal.

## Merits of the Claims

The parties have offered no analysis on the merits. There was no memorandum in support of the Petition nor was there analysis of the merits in the Return of Writ as an alternative to the procedural default defense.[1] Petitioner devoted his Traverse exclusively to stating the law and arguing the procedural default defense related to failure to appeal. The Court is therefore limited to the analysis made in the First District Court of Appeals and the arguments the parties made in that court.

The court of appeals summarized the facts of the crimes as follows:

> [*P2] The record shows that a group of teenagers that included Ikasha Collins, Emily Ingram, Edward Thompson, and Jomar Lyles were "hanging out" on the Collins family's porch, laughing and joking. Baldwin, whom the teenagers knew from the neighborhood, came up to them and joined them in the joking. But he became angry when the jokes focused on his mother. Baldwin and the teens exchanged insults and threats. At least one person threw a rock at him, and another tried to engage him in a fight.

---

[1] At the end of the Return, Respondent moves for dismissal on the basis of procedural default, but the Return was not filed as a motion to dismiss nor was any request made to decide that defense apart from a decision on the case as a whole.

[*P3] Eventually, Baldwin left the area, but he came back a few minutes later. He pulled out a gun and fired one or two shots in the direction of the porch. The crowd quickly scattered. A bullet grazed Thompson as he was trying to run to safety. Baldwin drove away from the scene with a family member.

*State v. Baldwin,* 2009 Ohio 5348, 2009 Ohio App. LEXIS 4544 (1st Dist. Oct. 9, 2009).

### Ground One

In his First Ground for Relief, Petitioner asserts the prosecutor violated his right to remain silent under the Fifth Amendment by commenting on his silence in closing argument.

This claim was raised as the first assignment of error on direct appeal. The court of appeals decided the claim as follows:

> [*P4] In his first assignment of error, Baldwin contends that the trial court erred in permitting the state to refer to his silence in closing argument. He argues that the state's argument that he did not deny being at the scene of the shooting was an improper comment on his exercise of his right to remain silent under the United States and Ohio Constitutions. This assignment of error is not well taken.
>
> [*P5] The state may not directly comment on a defendant's failure to testify in a criminal proceeding. *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407; *State v. Watson,* 1st Dist. No. C-010691, 2002 Ohio 4046, P25 (*Watson I*). A comment may warrant reversal if it prejudices the defendant's substantial rights to a fair trial. *Watson I.* But the state may comment upon a defendant's failure to present evidence in support of his case, including the weight of the evidence that the defendant has presented in support of an exculpatory theory. *State v. Collins,* 89 Ohio St.3d 524, 527-528, 2000 Ohio 231, 733 N.E.2d 1118; *State v. Watson* (1991), 61 Ohio St.3d 1, 9, 572 N.E.2d 97; *Watson I, supra*, at P25. A comment impinges on a defendant's right not to testify if it was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to

testify." *State v. Webb*, 70 Ohio St.3d 325, 328-329, 1994 Ohio 425, 638 N.E.2d 1023; *Watson I, supra*, at P26; *State v. Heard* (Aug. 13, 1999), 1st Dist. No. C-980443, 1999 Ohio App. LEXIS 3698.

[*P6]  Our review of the record shows that Baldwin failed to object to the comment of which he now complains. Consequently, we can only reverse upon a finding of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 Ohio B. 360, 444 N.E.2d 1332; *State v. Hirsch* (1998), 129 Ohio App.3d 294, 309, 717 N.E.2d 789.  An alleged error does not rise to the level of plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913; *State v. Burrell,* 1st Dist. No. C-030803, 2005 Ohio 34, P15.

[*P7]   The record further shows that at trial some discussion occurred about Baldwin's failure to file a notice of alibi. See Crim. R. 12.1.  The trial court stated that his witness's testimony might be curtailed if he attempted to establish an alibi defense. Baldwin's counsel replied that he was not presenting an alibi defense, but claiming that the shooting never happened.

[*P8]  Baldwin's witness, Robert Caldwell, essentially presented an alibi defense, testifying about what Baldwin had done on the night in question and commenting upon his general demeanor. The trial court allowed the testimony.

[*P9]  During closing argument, the prosecutor told the jury that Baldwin had not even alleged an alibi and that an alibi defense was not involved in this case. She stated, "This is not a case * * * with the defense saying, wait a minute, you have the wrong person. I wasn't there at that date, time, place and location." She added that Baldwin was trying to establish an alibi with Caldwell's testimony. She then stated, "I don't want you to think that that's what Robert Caldwell was about. Okay? Because there is no alibi in this case." She went on to state that Caldwell's testimony was irrelevant.

[*P10]  These comments were not of such a character that the jury would necessarily have taken them to be a comment on Baldwin's failure to testify. They were only a comment on the nature of Baldwin's defense and the strength of his evidence. Further, the court instructed the jury that it could not consider Baldwin's failure to testify for any purpose, and we must presume that the jury followed that instruction. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 163, 5 Ohio B. 380, 450 N.E.2d 265; *Heard, supra*.  We cannot hold that

> the prosecutor's remark unfairly prejudiced Baldwin, much less that
> it rose to the level of plain error. Consequently, we overrule his first
> assignment of error.

*State v. Baldwin, supra.*

As a first point of analysis, the court of appeals only reviewed this assignment for plain error because there had been no contemporaneous objection to the prosecutor's comment. On this basis alone, the State is entitled to dismissal of the First Ground for Relief because the contemporaneous objection rule is an adequate and independent ground of state decision which was enforced against Petitioner here. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

If this Court looks past the procedural default, it must still consider the court of appeals' opinion on the merits of this claim, even though that court enforced a procedural default. *Fleming v. Metrish*, 556 F.3d 520 (6th Cir. 2009). When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court, even if the decision was made on

plain error review. *Id.;* 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Applying these standards to the prosecutor's conduct in this case, the Court finds no

improper conduct. Having expressly said he was not presenting an alibi defense (and apparently having failed to comply with the advance notice requirements for an alibi defense), Petitioner then presented an alibi witness. The prosecutor was entitled to point out that the testimony was irrelevant, as indeed it was. Even if the conduct had been improper, it was plainly isolated and not intended to mislead the jury, but rather to prevent the misleading impression created by Mr. Campbell's testimony.

The court of appeals' decision on this Ground for Relief is not an objectively unreasonable application of Supreme Court precedent. Petitioner's First Ground for Relief is therefore procedurally defaulted by counsel's failure to object and also without merit. The First Ground for Relief should be dismissed with prejudice.

**Ground Two**

In Ground Two Mr. Baldwin asserted his rights under the Confrontation Clause were violated when another witness was permitted to testify that Jomar Lyles had identified him in a photo spread without being subject to cross-examination.

Petitioner raised this as his second assignment of error on direct appeal. The First District Court of Appeals held:

> [*P11] In his second assignment of error, Baldwin contends that the trial court violated his right to confront the witnesses against him. He argues that the trial court admitted into evidence hearsay testimony regarding a witness's identification of him when that witness could not be cross-examined. This assignment of error is not well taken.
>
> [*P12] The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right

> * * * to be confronted with the witnesses against him[.]" In *Crawford v. Washington*, (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177, the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53-54; *State v. Robinson*, 1st Dist. No. C-060434, 2007 Ohio 2388, P12.
>
> [*P13] In this case, a police detective testified that Jomar Lyles had identified Baldwin as the shooter in a photographic lineup. Lyles did not testify, and Baldwin never had an opportunity to cross-examine him. The state acknowledges that this testimony was hearsay, and we agree with Baldwin that its admission into evidence violated the Confrontation Clause.
>
> [*P14] Nevertheless, Baldwin did not object. Consequently, we may only reverse upon a finding of plain error. The evidence against Baldwin was overwhelming. See *Robinson, supra*, at P16; *Hirsch, supra*, at 310. Five witnesses had already testified that Baldwin, whom most of them knew from the neighborhood, was the shooter. The detective testified that Lyles had come to the police station with Thompson and that Thompson had also identified Baldwin. We cannot hold that, but for the error, the outcome of the proceedings would have been different. Therefore, the error did not rise to the level of plain error, *see Wickline, supra,* at 119-120; *Burrell, supra,* at P15. and we overrule Baldwin's second assignment of error.

*State v. Baldwin, supra*.

As with the first assignment of error, Petitioner procedurally defaulted on this claim because his counsel did not object and the appeals court conducted only plain error review. Doing so, it found from the record that five other witnesses, at least some of whom had been familiar with Mr. Baldwin from the neighborhood, testified before the detective who repeated the station-house identification by Lyles. The court of appeals found it was a violation of Petitioner's Confrontation Clause rights to admit the hearsay identification, but that the outcome would have been no different if an objection had been sustained.

This Court agrees with the court of appeals that Petitioner's Confrontation Clause rights were violated by admitting the out-of-court identification. The question before this Court must be whether the violation was harmless error.

Constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt. Rather, error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004).

Given the court of appeals' finding of fact that five other eyewitnesses, some of whom were already familiar with Mr. Baldwin, identified him as the shooter, the constitutional error of admitting Lyles' identification was harmless error.

Therefore the Second Ground for Relief should be dismissed with prejudice, both as procedurally defaulted for want of objection and because the constitutional violation was harmless error.

**Ground Three**

In his Third Ground for Relief, Petitioner asserts that, under the Double Jeopardy Clause, he could only be convicted on one count of felonious assault because he only fired one shot without any evidence of an intent to injure more than one person. He also alleges that felonious assault and discharge of a firearm near prohibited premises are allied offenses of similar import and therefore

he could only be sentenced for one of them.

The court of appeals analyzed this claim, which Mr. Baldwin made as his third assignment of error, under the Ohio allied offenses statute, Ohio Revised Code § 2941.25. While that statute protects many of the same interests as the Double Jeopardy Clause, only claims under the latter protection can be considered in federal habeas corpus and the federal courts have developed somewhat different standards for considering these claims. This claim will only be considered here to the extent it encompasses a Double Jeopardy claim.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).

The test for whether two offenses constitute the same offense is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger v. United States*, 284 U.S. 299 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).

Felonious assault under Ohio Revised Code § 2903.11(A)(2) requires proof that a defendant

caused or attempted to cause physical harm to another by use of a deadly weapon or dangerous ordnance. Ohio Revised Code § 2923.162(A)(3) prohibits discharge of a firearm upon a public road or highway. Under Ohio law, "firearm" and "deadly weapon" are different elements because many things can be deadly weapons which are not firearms. Moreover, the felonious assault charge required proof of intent to harm someone and the discharge of a firearm count required proof that it was on a public road or highway, regardless of whether any person was intended to be harmed. Thus these two charges satisfy the *Blockburger* test and there was no violation of the Double Jeopardy Clause in convicting Petitioner of both of them.

As to the second part of this claim, the court of appeals held:

> [*P23] But even if he had only fired a single shot, Baldwin could still have been convicted of more than one count of felonious assault. He is incorrect in asserting that there was only one victim. He was charged under R.C. 2903.11(A)(2), which prohibits not only causing physical harm, but also attempting to cause physical harm. While he injured only one person, he attempted to cause physical harm to a number of people who were standing together, and, therefore, multiple victims existed. See *State v. Murray*, 156 Ohio App. 3d 219, 2004 Ohio 654, P24, 805 N.E.2d 156.

*State v. Baldwin, supra.* Even apart from the court of appeals holding that there was evidence to support a finding that two shots were fired, this analysis of Ohio law supports the conclusion that there was no violation of the Double Jeopardy Clause. When a person fires a firearm into a crowd of people, he can appropriately be found to have intended to harm all those at whom he aimed.

Petitioner's Third Ground for Relief is therefore without merit and should be dismissed with prejudice.

**Ground Four**

In his Fourth Ground for Relief, Mr. Baldwin asserts that his trial attorney provided ineffective assistance of trial counsel in three respects: (1) failure to object to the prosecutorial misconduct in commenting on his post-arrest silence in closing argument; (2) failure to object to the Confrontation Clause violation in admitting the Lyles out-of-court identification; (3) failure to argue for the merged of allied offenses of similar import prior to sentencing; and (4) failure to object to the imposition of consecutive sentences.

The fourth of these sub-claims was never presented to the First District Court of Appeals and is therefore procedurally defaulted.

The first three sub-claims were presented on direct appeal as the fourth assignment of error. The court of appeals applied the appropriate United States Supreme Court precedent, *Strickland v. Washington*, 466 U.S. 668 (1984). It held, in conclusory fashion, that Petitioner had not satisfied either the professional error or the prejudice branch of the *Strickland* test. Although its analysis of this claim was cursory, it is still entitled to deference under 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 784 (2011).

With respect to failure to object during closing argument, as the court of appeals held, there was no prosecutorial misconduct to object to. Even if there had been, counsel are often ill-advised to interrupt an opponent's closing argument, for to do so is known to anger both jurors and judges.

With respect to the out-of-court identification, here again there was so much other eyewitness identification from persons familiar with the Petitioner that the failure is unlikely to had had any prejudicial effect on the outcome.

Finally, the third sub-claim is without merit for the reasons given by the court of appeals: Petitioner was not entitled to merger under the Ohio allied offenses statute, so that any objection would have failed on the merits.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would not be taken in objective good faith and therefore may not proceed *in forma pauperis*.

December 30, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District

Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).